BRYAN P. JOHNSON                                           CIVIL ACTION

VERSUS                                                          NO. 15-3408

N. BURL CAIN                                              SECTION: "F"(3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Bryan P. Johnson, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On September 1, 2010, he was convicted of attempted possession of a firearm by a convicted felon and distribution of marijuana.[1] On January 13, 2011, he was sentenced on the firearm conviction to a term of seven years imprisonment without the benefit of probation, parole, or suspension of sentence and on the drug conviction to a term of fifteen years imprisonment with the first two years to be served without the benefit of probation,

---

[1] State Rec., Vol. 3 of 5, trial transcript, p. 599; State Rec., Vol. 1 of 5, minute entry dated September 1, 2010; State Rec., Vol. 1 of 5, jury verdict forms. The jury also found petitioner guilty of a third charge, distribution of MDMA; however, the trial court subsequently granted the defense motion for post-judgment verdict of acquittal as to that charge. State Rec., Vol. 3 of 5, transcript of January 13, 2011; State Rec., Vol. 1 of 5, minute entry dated January 13, 2011.

parole, or suspension of sentence.[2]  On March 31, 2011, he was found to be a fourth offender and was resentenced as such on the drug conviction to a term of life imprisonment without benefit of probation, parole, and suspension of sentence.[3]  On May 14, 2012, the Louisiana First Circuit Court of Appeal affirmed his convictions, habitual offender adjudication, and sentences.[4]  The Louisiana Supreme Court then denied his related writ application on November 21, 2012.[5]

On or about November 20, 2013, petitioner filed an application for post-conviction relief with the state district court.[6]  That application was denied on February 12, 2014.[7]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on June 16, 2014,[8] and by the Louisiana Supreme Court on June 5, 2015.[9]

On or about June 17, 2015, petitioner filed a motion for reduction of sentence.[10]  That motion was denied on June 25, 2015.[11]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief.[12]  The state filed a response conceding that the application was timely[13] but arguing that it should be dismissed because petitioner failed to exhaust his remedies in the state courts.[14]  Petitioner filed a reply to that response.[15]

---

[2] State Rec., Vol. 3 of 5, transcript of January 13, 2011; State Rec., Vol. 1 of 5, minute entry dated January 13, 2011.
[3] State Rec., Vol. 3 of 5, transcript of March 31, 2011; State Rec., Vol. 1 of 5, minute entry dated March 31, 2011.
[4] State v. Johnson, No. 2011 KA 1841, 2012 WL 1744469 (La. App. 1st Cir. May 14, 2012); State Rec., Vol. 4 of 5.
[5] State v. Johnson, 102 So. 3d 53 (La. 2012).
[6] State Rec., Vol. 4 of 5.
[7] State Rec., Vol. 4 of 5, Judgment and Reasons for Judgment dated February 12, 2014.
[8] State v. Johnson, No. 2014 KW 0414 (La. App. 1st Cir. June 16, 2014); State Rec., Vol. 5 of 5.
[9] State ex rel. Johnson v. State, 171 So. 3d 940 (La. 2015); State Rec., Vol. 5 of 5.  The court also denied reconsideration on August 28, 2015.  State ex rel. Johnson v. State, 174 So. 3d 1161 (La. 2015); State Rec., Vol. 5 of 5.
[10] State Rec., Vol. 4 of 5.
[11] State Rec., Vol. 4 of 5, Order dated June 25, 2015.
[12] Rec. Doc. 1.
[13] Rec. Doc. 9, pp. 2-4.
[14] Rec. Doc. 9, pp. 4-5.
[15] Rec. Doc. 13.

# I.  Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted).  The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.  Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution.  Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

Therefore, for the federal exhaustion requirement to be met, "a petitioner must have fairly presented the substance of his claim[s] to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted).  Accordingly, to determine whether the instant federal claims are exhausted, this Court must compare those claims to the ones petitioner presented to the state courts.

In his federal application, petitioner asserted six claims:

1.      Petitioner's counsel was ineffective for improperly advising him with respect to an offered plea bargain;

2.      Petitioner was denied his rights under the federal Confrontation Clause;

3.      The bill of information was defective;

4. The trial court improperly allowed references to excluded evidence;

5. There was insufficient evidence to support petitioner's conviction for distribution of marijuana; and

6. The prosecutor engaged in misconduct by prosecuting petitioner for distribution of MDMA.[16]

In its response, the state concedes that petitioner exhausted his state court remedies with respect to his first, fourth, and fifth claims. However, the state argues that his second, third, and sixth claims are unexhausted because they were asserted in the state courts based on separate and distinct legal theories. Specifically, the state argues the claims were asserted in the state courts merely as ineffective assistance of counsel claims, not as they are currently asserted in the federal application, i.e. as substantive violations in their own right. In his reply to the state's response, petitioner acknowledges that the claims were indeed asserted as ineffective assistance of counsel claims in the state courts and clarifies that they are also intended as such here, stating: "Petitioner contends that these claim are still presented as 6th Amendment violations under ineffective assistance of counsel as reviewed in his application for-post-conviction relief. An[d] that is how petitioner elects for the Court to review such claims."[17]

Because petitioner is proceeding *pro se*, his pleadings must be liberally construed. <u>See, e.g.</u>, <u>McNeil v. United States</u>, 508 U.S. 106, 113 (1993) (acknowledging that the Supreme Court has "insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed"); <u>Hernandez v. Thaler</u>, 630 F.3d 420, 426 (5th Cir. 2011) ("The filings of a

---

[16] Rec. Doc. 1, pp. 22-23.
[17] Rec. Doc. 13, p. 3.

federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction."); Johnson v. Quarterman, 479 F.3d 358, 359 (5th Cir. 2007) ("Briefs by *pro se* litigants are afforded liberal construction...."). Accordingly, **the undersigned accepts petitioner's stated clarification and hereby deems the petition amended to the extent that the second, third, and sixth claims are being asserted only as ineffective assistance of counsel claims.** Cf. Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983) (a court is required to look beyond an inmate's initial pleading and consider as amendments subsequently filed materials that embellish the initial pleading's averments). The undersigned will therefore address all of petitioner's claims, as amended, on the merits.

## II. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling*

*on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein. White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

## III. Facts

The Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

On February 12, 2009, St. Tammany Parish Sheriff's Office Narcotics Division Detectives Scott Saigeon and Bill Johnson were observing 1429 Cherry Street in Slidell, following a complaint of narcotics activity at that address. Detective Saigeon saw a light blue vehicle arrive at the residence. A black male, later identified as Isaac Casnave, exited the car and entered the residence. A few minutes later, Casnave returned to his vehicle and left the location. Based on his experience and the "original information" he had received, Detective Saigeon suspected Casnave had engaged in narcotics activity and pursued him to the parking lot of a business some distance away from Cherry Street. Thereafter, Detective Saigeon arrested Casnave, who was in the front passenger seat of the vehicle, and took a statement from him. Casnave's girlfriend, Nicole Ballagh, was driving the vehicle, and Joseph Fey was a passenger in a rear seat of the vehicle. According to Detective Saigeon, Casnave stated that he, Ballagh, and Fey went to Cherry Street to purchase marijuana and MDMA, purchased those items, and left.

After Detectives Saigeon and Johnson left to pursue Casnave, St. Tammany Parish Sheriff's Office Detective Ricky Edwards maintained surveillance on 1429 Cherry Street. He indicated the front of the house was "lit up." He saw several vehicles come and go from the residence, with the occupants of the vehicles staying at the residence for a very short period of time. He also saw several pedestrians

walk to the residence, stay for a short period of time, and walk away. In his experience, repetitive short visits to a home were an indicator of narcotics activity.

Detective Edwards testified that one of the subjects he saw at the residence was a black male with a "chee-wee style," short dreadlock haircut. That subject left in a white Honda Accord, which had a Florida license plate, drove past Detective Edwards, and then returned approximately ten or fifteen minutes later. Detective Edwards indicated that as the subject drove past him, the subject looked directly at him from a distance of between ten and fifteen feet. After the subject returned, he stayed for between fifteen to thirty minutes and then left again. He passed Detective Edwards again, but drove more slowly. Detective Edwards indicated that while the subject was away from the residence, no visitors came to the residence. Detective Edwards identified the defendant in court as the subject.

Detective Saigeon executed a search warrant on 1429 Cherry Street. In the laundry room of the rear bedroom, later identified as the bedroom of Ranata Toney, he located an SKS assault rifle with twenty-nine live rounds in its magazine. Detective Johnson also found a Ziploc bag containing several other "baggies" in the dresser drawer of Ranata Toney's bedroom. Based on his experience in conducting "several hundred, if not thousands," of narcotics investigations, he concluded that the baggies contained marijuana residue and were consistent with bags used in the packaging of certain types of narcotics.

Detective Saigeon advised Ranata Toney of her <u>Miranda</u> rights, and took a written statement from her concerning the weapon. Subsequent investigation revealed the middle name of the defendant was Peter, and he was also known as "P" and "Pete." He was the boyfriend of Chantelle Toney, who also lived at 1429 Cherry Street, and the father of her child.

Detective Saigeon testified he also spoke to Sheila Boyd at 1429 Cherry Street. According to Detective Saigeon, Boyd stated she was "not going to jail for anybody" and told him that she knew the defendant was distributing narcotics from her residence, but she was in poor health, and "felt like that she couldn't do anything about it." At trial, Boyd denied making the statement.

The defendant was arrested less than twenty minutes after the execution of the search warrant on 1429 Cherry Street. He had been driving a white Honda Accord with a Florida license plate. At the time of his arrest, he had $8,260.00 in cash in his pocket.

The trial court accepted St. Tammany Parish Sheriff's Office Crime Lab Division Deputy Lloyd Thomas Morse as an expert in the identification and comparison of fingerprints. He testified he had fingerprinted the defendant that morning, and his fingerprints matched those appearing on the back of the bill of information in Twenty-second Judicial District Court Docket # 367832.[18]

---

[18] <u>State v. Johnson</u>, No. 2011 KA 1841, 2012 WL 1744469, at *1-3 (La. App. 4th Cir. May 14, 2012) (footnote omitted); State Rec., Vol. 4 of 5.

## IV.  Petitioner's Claims

## A.  Ineffective Assistance of Trial Counsel

Petitioner first claims that he received ineffective assistance of counsel at trial. Specifically, he contends that his counsel was ineffective in advising him with respect to an offered plea bargain, in failing protect his rights under the federal Confrontation Clause, and in failing to challenge the adequacy of the bill of information.

The United States Supreme Court established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that the petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as

of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

In the instant case, the state district court denied petitioner's ineffective assistance of counsel claims on the merits in the state post-conviction proceedings,[19] and his related writ applications were then likewise denied without additional reasons assigned by the Louisiana First Circuit Court of Appeal[20] and the Louisiana Supreme Court.[21] Because the claims were rejected by the state courts on the merits, and because such claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has

---

[19] State Rec., Vol. 4 of 5, Judgment and Reasons for Judgment dated February 12, 2014.
[20] State v. Johnson, No. 2014 KW 0414 (La. App. 1st Cir. June 16, 2014); State Rec., Vol. 5 of 5.
[21] State ex rel. Johnson v. State, 171 So. 3d 940 (La. 2015); State Rec., Vol. 5 of 5.

explained that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and*

> *§ 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of trial counsel claims.

Petitioner's first claim is that counsel provided bad advice which led petitioner to reject a plea bargain offered by the state. The United States Supreme Court has clearly held the Sixth Amendment's right to counsel is "a right that extends to the plea-bargaining process." <u>Lafler v. Cooper</u>, 566 U.S. 156, 162 (2012). A violation of the right in this context generally arises in two situations. In the first, defense counsel fails to timely inform his client of a plea offer; that is the situation addressed in <u>Missouri v. Frye</u>, 566 U.S. 133 (2012). In the second, defense counsel informs his client of the plea offer *but* then wrongly advises him to reject it; that is the situation in <u>Lafler</u>. Petitioner's claim is of the <u>Lafler</u> variety, i.e. counsel allegedly performed deficiently in advising petitioner to reject a plea offer based on counsel's inaccurate prediction of the chances of success at trial.

Claims of <u>Lafler</u> violations must be analyzed under <u>Strickland</u>'s two-prong analysis, meaning that petitioner prove *both* that counsel's performance was deficient *and* that prejudice

resulted.  In <u>Lafler</u>, the parties *conceded* that counsel's advice was deficient, and therefore it was unnecessary for the Supreme Court to address the analysis to be employed in determining deficient performance in the context of a <u>Lafler</u> claim.  <u>Lafler</u>, 566 U.S. at 160, 163 & 174.  Here, however, there is no such concession.

Nevertheless, as always, petitioner bears the burden of proving deficient performance and must rebut the "strong presumption" that counsel performed adequately.  On that point, the Supreme Court explained in <u>Strickland</u>:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  <u>Cf</u>. <u>Engle v. Isaac</u>, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982).  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."  <u>See</u> <u>Michel v. Louisiana</u>, 350 U.S. [91,] 101, 76 S.Ct. 158,] 164, [100 L.Ed. 83 (1955)].  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.  See Goodpaster, <u>The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases</u>, 58 N.Y.U.L.Rev. 299, 343 (1983).
>     ….
> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.  In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.  At the same time, the court should recognize

that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 466 U.S. at 689-90. Here, petitioner has not met his burden of proof to overcome that strong presumption for the following reasons.

In the instant case, petitioner was charged with three crimes: possession of a firearm by a convicted felon, distribution of marijuana, and distribution of MDMA.[22] He alleges that the prosecutor offered a favorable plea bargain: if petitioner would plead guilty to the firearm charge, the prosecutor would agree to a five-year sentence on that charge and would dismiss the two drug charges. Petitioner further alleges that defense counsel advised that the offer be rejected based on his belief that the state would be unable to secure a conviction.

In support of his claim, petitioner points to a letter from counsel dated February 20, 2010. At the time the letter was written, the Louisiana First Court of Appeal had ruled that the drugs seized during Casnave's arrest must be suppressed and therefore could not be introduced at petitioner's trial. That ruling was under review by the Louisiana Supreme Court, and defense counsel believed that the chances of prevailing at trial were good if the Supreme Court upheld the suppression ruling. He wrote to petitioner:

> I sincerely believe that you are not guilty of this offense and that you are currently in the driver's seat.
> Even as difficult as it is to be without family, I would **never** encourage you or even remotely suggest that you enter a plea of guilty when you are in fact not guilty of the charges imposed against you ….[23]

Defense counsel further noted that a conviction would have severe adverse consequences for petitioner:

---

[22] State Rec., Vol. 1 of 5, bill of information.
[23] Rec. Doc. 1-1, p. 146.

> Bear in mind, any felony conviction would subject you to parole revocation. Moreover, your prior record would make you ineligible for a diminution of sentence for good time and will likely to [sic] eliminate any possibility of parole, which would essentially flatten out any sentence that the Court may impose on you. Therefore, we need to continue to focus our current strategy at least until we hear from the Supreme Court.[24]

The Louisiana Supreme Court thereafter denied the state's writ application,[25] meaning that the evidence seized during Casnave's arrest would remain suppressed and could not be introduced at petitioner's trial. Nevertheless, even without that evidence, petitioner was ultimately convicted.

It must be remembered that petitioner does not allege that counsel precluded him from accepting the plea offer; rather, he argues only that counsel advised against it. Further, he does not allege that counsel misstated facts or the applicable law, but instead only that he wrongly assessed the chances of success at trial. However, the Supreme Court in Lafler took care to note that "an erroneous strategic prediction about the outcome of a trial is not necessarily deficient performance." Lafler, 566 U.S. at 174. Moreover, bad advice alone generally is insufficient to establish a Lafler violation. Wilson v. Addison, 577 Fed. App'x 782, 786 (10th Cir. 2014); United States v. Patterson, 525 Fed. App'x 681, 685 (10th Cir. 2013).

Under the facts of this case, the undersigned cannot say that counsel's advice was so unreasonable as to constitute deficient performance. Counsel's prediction of success at trial was not completely unfounded, in that the state's evidence against petitioner was hardly overwhelming. With respect to the firearm offense, petitioner was not caught with the gun in his actual possession; rather, it was simply found in a house occupied by several individuals, and it was in fact found in a laundry room connected to Ranata Toney's bedroom. Similarly, with respect to the marijuana

---

[24] Id.
[25] State v. Johnson, 34 So.3d 281 (La. 2010).

16

charge, no marijuana was found in petitioner's actual possession. The only evidence found with respect to that charge were baggies containing "residue." Moreover, the baggies were found in Ranata Toney's bedroom, and the "residue" was never in fact analyzed and confirmed to be marijuana. Therefore, no physical evidence directly connected petitioner to the crimes. Further, although Detective Saigeon suspected that Casnave had purchased drugs at the residence, the drugs seized during Casnave's arrest were suppressed, and Casnave testified at trial that petitioner had given him only "tattoo ink" on the day question.[26] In light of these considerations, it was not beyond the pale for defense counsel to believe that acquittal was an actual possibility. In light of that fact, along with the facts that a guilty plea might result in petitioner's parole being revoked and that his criminal history might make him ineligible for a "good time" parole on the new conviction, it was neither unreasonable nor deficient performance for counsel to advise petitioner to try for acquittal at trial rather than plead guilty to a crime that he says he did not in fact commit. Although petitioner was ultimately convicted, that does not mean that counsel's advice was unreasonable at the time it was given. Therefore, this claim fails.

Petitioner also argues that counsel was ineffective for failing to protect petitioner's rights under the federal Confrontation Clause.[27] Specifically, petitioner alleges that detectives at trial were allowed to testify that they were told by various individuals that petitioner distributed drugs to them. Petitioner argues that this violated his confrontation rights because none of those individuals testified at trial.

---

[26] State Rec., Vol. 3 of 5, trial transcript, pp. 452-53 and 463.
[27] As previously noted, petitioner originally presented this claim in his federal application as a Confrontation Clause claim; however, he later amended his application to clarify that he was arguing only that trial counsel was ineffective for failing to protect his right to confrontation.

As an initial matter, the Court notes that petitioner provides specific citations to the trial transcript which he says support his claim;[28] however, those citations arguably do not in fact support the claim. He first cites to pages 370-71 of the trial transcript; however, in that testimony, the officer simply testified that he had obtained statements – but he did *not* recount the substance of those statements.[29] His second citation is to pages 426-27. However, in that instance, the information was elicited by *defense counsel* on cross-examination, and, in any event, the testimony recounted only the fact of an individual's arrest and did *not* mention any statements made by the person.[30] His third citation is to page 432. This citation comes closest to supporting petitioner's claim. However, even there, the witness did not expressly recount statements of the individuals arrested; rather, the testimony skirted the line by having the officer state the identity of the person alleged to have distributed the drugs, without actually saying how the officer learned that information.[31] The final citation is to page 442. However, again, this testimony was elicited by *defense counsel* on cross-examination, and his apparent purpose in eliciting the information was to show that the arrested individual referred to the distributor by a nickname without ever actually confirming that the distributor was in fact petitioner.[32]

In any event, regardless of whether any testimony could be read as improperly recounting hearsay declarations of nontestifying accusers or whether counsel was unwise to elicit such information on cross examination, petitioner has not established that counsel was ineffective in this regard. As already noted, the United States Supreme Court has clearly held there is a "strong

---

[28] See Rec. Doc. 1, p. 29.
[29] State Rec., Vol. 2 of 5, trial transcript, pp. 370-71.
[30] Id. at pp. 426-27.
[31] Id. at p. 432.
[32] State Rec., Vol. 3 of 5, trial transcript, p. 442.

presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that a petitioner bears the burden of overcoming "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. For the following reasons, petitioner has not overcome that presumption.

Here, the mentions of these other drug transactions and accusations were primarily made in passing at trial. Further, it appears that counsel was attempting to make a point – specifically: if these other instances of drug distribution truly occurred, then why did the state not offer any actual proof by calling the accusing individuals to testify? That was clear the thrust of counsel's closing argument.[33] Moreover, that was not an unreasonable tactic, in that it further strengthened the defense's argument that all of the state's evidence was inadequate and suspect, consisting almost entirely of tenuous circumstantial evidence and recanted statements. Again, the mere fact that the tactic was ultimately unsuccessful does not mean that it was unreasonable or constituted deficient performance at the time. Accordingly, under the AEDPA's strict and doubly deferential standard of review, this claim likewise fails.

Petitioner next argues that the bill of information failed to identify the individuals to whom petitioner allegedly distributed drugs and, therefore, counsel was ineffective for failing to challenge it on that basis. However, under Louisiana law, the state is not required to include the name of the person buying or receiving the drugs being distributed in the bill of information; if a defendant wants that information, he must file a bill of particulars. State v. Martin, 310 So.2d 544, 545 (La. 1975). Therefore, any challenge to the adequacy of the bill of information on this basis would have been meritless, and it is clear that the "[f]ailure to raise meritless objections is not

---

[33] See, e.g., State Rec., Vol. 3 of 5, trial transcript, pp. 543-44.

ineffective lawyering; it is the very opposite." Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994); accord United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Relatedly, petitioner argues that counsel was ineffective for failing to request that information through discovery or by filing a bill of particulars. However, petitioner has failed to establish that requesting the information in this manner would have helped counsel develop a more competent trial strategy, especially in that he was presumably already aware of the other purported drug transactions – they were documented in the police report produced in discovery[34] and mentioned during the pretrial preliminary examination.[35] Therefore, petitioner has not established the prejudice necessary to prove his claim. See Wiltz v. Louisiana, No. 94-30017, 1994 WL 286254, at *4 (5th Cir. June 22, 1994).

For all of these reasons, it is clear that petitioner has not demonstrated that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

---

[34] See State Rec., Vol. 2 of 5, trial transcript, pp. 430-31.
[35] State Rec., Vol. 1 of 2, transcript of September 16, 2009, p. 145.

## B.  Ineffective Assistance of Appellate Counsel

Petitioner also claims that the prosecutor engaged in misconduct by prosecuting petitioner for distribution of MDMA.  Specifically, petitioner alleges that, although he was charged with distribution of MDMA, the substance at issue was in fact only a synthetic variation not illegal under state law at the time.  He further alleges that the state was obviously aware of that fact, in that it agreed to *nolle prosse* the related MDMA possession charge against Casnave on that basis.  Petitioner argues that state's decision to nevertheless continue to prosecute him for distribution of the substance constituted prosecutorial misconduct, and, therefore, counsel was ineffective for failing to challenge the state's action on that basis on appeal.[36]

Like claims challenging the effectiveness of trial counsel, claims challenging the effectiveness of appellate counsel are analyzed under the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to prove both deficient performance and resulting prejudice.  Smith v. Robinson, 528 U.S. 259 (2000).  To prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation.  Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  Briseno, 274 F.3d at 210.

---

[36] As previously noted, petitioner originally presented this claim in his federal application as a prosecutorial misconduct claim; however, he later amended his application to clarify that he was arguing only that appellate counsel was ineffective for failing to raise a prosecutorial misconduct claim on direct appeal.

Moreover, when considering such a claim, a court must remember that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753. As a result, the applicable test to be applied in assessing such a claim is whether the issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); accord Robbins, 528 U.S. at 288.

On direct appeal in this case, appellate counsel asserted five claims: (1) the trial court erred in failing to sever the firearm charge for trial; (2) the evidence was insufficient to support the conviction; (3) the trial court erred in denying the motion for post-verdict judgment of acquittal on the firearm and marijuana distribution charges; (4) the trial court erred in allowing the state to refer to evidence that had been suppressed; and (5) the trial court erred in denying the motion for new trial.[37] Although those claims were ultimately found to be without merit, this proposed prosecutorial misconduct claim was certainly no stronger, especially in light of the fact that the trial court *granted* the defense motion for post-verdict judgment of acquittal with respect to the

---

[37] State Rec., Vol. 5 of 5, appellant's brief.

charge of distribution of MDMA.[38]  Therefore, petitioner's conviction for distribution of MDMA

*no longer existed* at the time of the appeal.  As a result, the prejudice resulting from the purported

prosecutorial misconduct, if any, had been ameliorated and would not have served as a sufficient

basis for the Court of Appeal to vacate petitioner's remaining convictions.

## C.  Evidentiary Ruling

Petitioner next claims that the trial court improperly allowed references to excluded

evidence.  On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [The defendant] argues that this court ordered the physical evidence seized in the
> unlawful stop of Ballagh's vehicle suppressed, and thus, it was improper for the
> State to question Casnave about drugs found on his person during the traffic stop.
>
> In an unpublished decision addressing the defendant's pretrial writ
> application, State v. Johnson, 2009-1901 (La.App. 1st Cir. 10/23/09), writ denied,
> 2010-0246 (La. 4/30/10), 34 So.3d 281, this court ruled:
>
> > **WRIT GRANTED IN PART AND DENIED IN PART.**
> > The ruling of the trial court denying relator's motion to suppress the
> > evidence seized from the searches conducted pursuant to the
> > investigatory automobile stop of Issac Casnave, Joseph Fey, and
> > Nicole Ballagh is reversed.  Herein, the anonymous tip, together
> > with the observations of the police officers during the surveillance,
> > did not provide reasonable suspicion for an investigatory stop.  See
> > State v. Robertson, 97-2960 (La. 10/20/98), 721 So.2d 1268, 1270.
> > See also State v. Johnson, 98-0264 (La.App. 1st Cir. 12/28/98), 728
> > So.2d 885.  The writ is denied insofar as it seeks review of the ruling
> > denying the motion to suppress the confession.  La. Const. art. 1, §
> > 5 grants standing to any person "adversely affected" by a search and
> > seizure conducted in violation of the Louisiana constitutional
> > guarantee against unreasonable searches and seizures.  However, a
> > person adversely affected by a confession unlawfully obtained from
> > another has no standing to raise its illegality in court.  See State v.
> > Burdgess, 434 So.2d 1062, 1064 (La. 1983).  See also State v. Tran,
> > 98-2812 (La.App. 1st Cir. 11/5/99), 743 So.2d 1275, 1279, writ
> > denied, 99-3380 (La. 5/26/00), 762 So.2d 1101.  This writ is denied
> > in all other respects and this matter is remanded for further
> > proceedings.

---

[38] State Rec., Vol. 3 of 5, transcript of January 13, 2011; State Rec., Vol. 1 of 5, minute entry dated January 13, 2011.

**JTP**

**JMG**

CARTER, C.J., agrees in part and dissents in part and would deny the writ in its entirety.

At trial, Casnave testified that on February 12, 2009, he was arrested for possession of marijuana and MDMA, and he had these drugs in his possession when he was stopped by the police. Thereafter, the defense objected, contending the State had solicited impermissible evidence after the State asked Casnave, "What did you tell [the police] about the drugs that you had on you?" The trial court overruled the objection and Casnave responded, "They really didn't ask me nothing. They found them on me and put me in cuffs and gave me a possession charge." Casnave denied telling the police he had travelled to Cherry Street to purchase marijuana and MDMA from "Pete." He claimed the police never asked him where he had obtained the drugs he had in his possession. He stated the defendant gave him "tattoo ink" on the day in question.

In his brief to this court, the defendant quotes LSA-C.Cr.P. 851 (grounds for new trial), but makes no specific argument concerning that article. In his motion for new trial, he argued, "[t]he prosecutor blatantly disregarded the Louisiana First Circuit's ruling and made references to the suppressed evidence within the hearing of the jury[.]" At the hearing on the motion, he argued the trial court's ruling on objections showed prejudice, and cited the questioning of Casnave, concerning his arrest for controlled dangerous substances, as demonstrating such prejudice. The trial court rejected his argument in pertinent part, stating:

> Mr. Johnson was successful on a Motion to Suppress certain evidence which clearly would have inculpated him in distribution of MDMA and marijuana. That particular evidence was suppressed. That particular evidence was, apparently, prohibited substances, but it was suppressed. The testimony relative to the transactions was not suppressed and was not suppressible in this Court's view. Reference to the fact of what transpired was not suppressible.

The trial court correctly distinguished the physical evidence, *i.e.* marijuana and purported MDMA, which this court ordered suppressed, from Casnave's testimony concerning that evidence. This court specifically rejected the defendant's attempt to have the latter suppressed, ruling "a person adversely affected by a confession unlawfully obtained from another has no standing to raise its illegality in court." The jurisprudence has recognized this distinction. In State v. Anderson, 358 So.2d 276 (La. 1978), the defendant appealed from his convictions for armed robbery and attempted kidnapping. He argued the trial court

erred in overruling his objection to State-elicited testimony referring to suppressed evidence. 358 So.2d at 277. The court rejected that argument, holding:

> [The holdings in <u>Mapp v. Ohio</u>, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and <u>Ker v. California</u>, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)] established that any tangible evidence obtained through an unconstitutional search could not be admitted into evidence. It is reasonable to conclude that no testimony relating to the location of the evidence at the place searched, as well as the physical evidence itself, may be admitted into evidence. However, this exclusionary rule does not preclude every reference to the existence of the items ordered suppressed. It merely precludes the admission of the physical items into evidence.

358 So.2d at 277.

The defendant cites <u>State v. Patton</u>, 374 So.2d 1211 (La. 1979) for the proposition "[a]ny distinction 'between testimonial and tangible evidence' is irrational and untenable." However, the court in <u>Patton</u> was addressing the limited issue of whether or not an investigator's in-court identification of the defendant was permissible following his illegal arrest, or whether the identification had to be suppressed as the fruit of the illegal arrest. 374 So.2d at 1212-14. That issue is not presented in this case. [39]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons. [40]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." <u>Little v. Johnson</u>, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is simply arguing that the state courts misapplied state evidence law, his claim is not reviewable in this federal proceeding.

---

[39] <u>State v. Johnson</u>, No. 2011 KA 1841, 2012 WL 1744469, at *7-9 (La. App. 4th Cir. May 14, 2012); State Rec., Vol. 4 of 5.

[40] <u>State v. Johnson</u>, 102 So. 3d 53 (La. 2012).

To the extent that petitioner is also asserting a federal claim, he fares no better. Even if petitioner could show that the references to the excluded evidence were in fact improperly admitted, federal habeas relief still would not be warranted. The United States Fifth Circuit Court of Appeals has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

Here, the references to the drugs during Casnave's testimony did *not* inculpate petitioner – although Casnave was in possession of the drugs, he did *not* identify petitioner as the source of those drugs. On the contrary, although police suspected that Casnave had procured those drugs from petitioner during the observed meeting, Casnave testified that he was only retrieving his "tattoo ink" from petitioner at that meeting.[41] Therefore, it cannot reasonably be said that the references to Casnave's drugs played a crucial, critical, and highly significant role in petitioner's conviction for drug distribution.

For these reasons, this claim should be rejected.

### D. Sufficiency of the Evidence

Lastly, petitioner claims that there was insufficient evidence to support his convictions. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

---

[41] State Rec., Vol. 3 of 5, trial transcript, pp. 452-53 and 463.

The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, in order to convict, "assuming every fact to be proved that the evidence tends to prove," every reasonable hypothesis of innocence is excluded. State v. Wright, 98-0601 (La.App. 1st Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157, 2000-0895 (La. 11/17/00), 773 So.2d 732 (quoting LSA-R.S. 15:438).

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Wright, 730 So.2d at 487.

Louisiana Revised Statute article 14:95.1, in pertinent part, provides:

A. It is unlawful for any person who has been convicted of ... any violation of the Uniform Controlled Dangerous Substances Law which is a felony ... to possess a firearm or carry a concealed weapon.

Louisiana Revised Statute article 14:95.1 does not make "actual" possession a necessary element of the offense or specifically require that the defendant have the firearm on his person to be in violation. "Constructive" possession satisfies the possessory element of the offense. Constructive possession occurs when the firearm is subject to the offender's dominion and control. Dominion and control over a weapon are sufficient to constitute constructive possession even if the control is only temporary in nature and even if the control is shared with another person. Mere presence in an area where a firearm is found, or mere association with an individual found to be in possession of a firearm, does not necessarily establish possession. See State v. Fisher, 94-2255 (La.App. 1st Cir. 12/15/95), 669 So.2d 460, 462, writ denied, 96-0958 (La. 9/20/96), 679 So.2d 432.

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. LSA-R.S. 14:27(A). Specific criminal intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1); State v. Henderson, 99-1945 (La.App. 1st Cir. 6/23/00), 762 So.2d 747,

751, <u>writ denied</u>, 2000-2223 (La. 6/15/01), 793 So.2d 1235. Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. <u>Id</u>.

At trial, the State introduced into evidence the December 12, 2008 written statement of Ranata Toney, to-wit:

> The gun that was found in the laundry room right outside of the room that my kids and myself sleep in does not belong to me. I was unaware that there was a gun in that room. The gun was bought [sic] here by Brian Johnson.

Ranata Toney also testified at trial. She indicated that on February 12, 2009, she was living on Cherry Street. She stated the police came to the house on that date. She testified the defendant had been in the house that day. She claimed the police questioned her about a gun, but showed her only a bag. She indicated the police told her the gun was found outside the room where she was sleeping. She denied any knowledge that the gun had been located there. She conceded she had given the police a written statement implicating the defendant. She claimed she did so after the police insisted she tell them to whom the gun belonged. She claimed the police threatened to take "everybody" to jail and place her children with the office of child services. She stated, "If a gun was found in the house, I know that none of my sisters or my mom would have brought a gun there," but claimed she did not "know" who brought the gun into the house.

At the hearing on the post-trial motions, trial defense counsel indicated Casnave's attorney had advised trial defense counsel that the alleged MDMA was in fact "a synthetic substance and was not chargeable under the statute." The court found there was "clear evidence" that the defendant distributed a substance which was marijuana. The court stated the jurors could have determined there was clear evidence the residue in the bags was marijuana. In regard to count III, the court, even in viewing the evidence in the light most favorable to the State, could not find sufficient evidence to support the verdict.

A thorough review of the record indicates that any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of attempted possession of a firearm by a convicted felon and distribution of marijuana. The verdict returned on count I indicates the jury credited the written statement of Ranata Toney and rejected defense attempts to discredit that statement. As to count II, the jury examined the baggies containing alleged marijuana residue, and Detective Saigeon testified they contained marijuana residue and were consistent with bags used in the packaging of narcotics. Detective Saigeon also testified that

when Casnave was stopped after leaving 1429 Cherry Street, he confessed to purchasing marijuana and MDMA on Cherry Street. Additionally, Detective Saigeon testified that Boyd told him the defendant was distributing narcotics from 1429 Cherry Street.

On review, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429 (La.App. 1st Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La. 10/17/97), 701 So.2d 1331. Further, in reviewing the evidence, we cannot say that the trial court's determination was irrational under the facts and circumstances presented to it. See State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the trial court. See State v. Calloway, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).[42]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[43]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that he has made no such showing.

Claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the United States Supreme Court held that,

---

[42] State v. Johnson, No. 2011 KA 1841, 2012 WL 1744469, at *3-5 (La. App. 4th Cir. May 14, 2012) (footnote omitted); State Rec., Vol. 4 of 5

[43] State v. Johnson, 102 So. 3d 53 (La. 2012).

in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

Further, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal habeas corpus proceedings; in these proceedings, only the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v.

Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Here, petitioner's convictions were based on the testimonial evidence presented at trial, specifically the officers' testimony concerning their observations and the statements they procured from individuals who implicated petitioner in the crimes. Petitioner argues that the officers' testimony lacked credibility, especially in light of the fact that the purported statements from witnesses were recanted at trial. However, credibility determinations are the province of the jurors, and they obviously found the officers more credible than the recanting witnesses. A federal habeas court generally will not grant relief on a sufficiency claim grounded on such matters of credibility. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the guilty verdicts were irrational. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Bryan P. Johnson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twelfth day of May, 2017.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**